FILED
Feb 10, 2020
09:38 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT COOKEVILLE

| | |
|---|---|
| AMBER WEST,<br>　　　　Employee, | )<br>) Docket No. 2019-04-0085<br>) |
| v. | )<br>) |
| | ) |
| THE BALANCED CANINE<br>TRAINING ACADEMY,<br>　　　　Employer,<br>And | )<br>) State File No. 64539-2017<br>)<br>)<br>) |
| | ) |
| STATE FARM INSURANCE,<br>　　　　Carrier. | )<br>) Judge Robert Durham |

---

## EXPEDITED HEARING ORDER

---

The Court held an expedited hearing on January 29, 2020, to determine whether Amber West is likely to prove that her low-back injury primarily arose out of and in the course of her employment. If so, the next issue is whether she is entitled to psychiatric care for this incident and resulting injury. Ms. West also asserted she is entitled to additional temporary disability benefits because Balanced Canine Training Academy (BCTA) inaccurately reported her average weekly wage. The Court holds that Ms. West is likely to prove she suffered a work-related low-back injury; however, she did not establish entitlement to psychiatric care. The Court further holds BCTA is not obligated to pay additional temporary disability benefits at this time.

### History of Claim

In early January 2017, Annelise Lynch, owner of BCTA, approached Ms. West about working with her in her new dog-training business. Ms. West's duties would include working in BCTA's office as well as feeding and caring for dogs.

The parties discussed some of the employment terms by text. Ms. Lynch texted Ms. West that it would not be many hours, and she would be paid "under the table," i.e.,

1

unreported and in cash. They also agreed through text that Ms. West's schedule for the first week beginning January 9 would be "Monday: 3:30-7:00/7:30; Tuesday: 1:00-8:00/8:30 and Wednesday 11:00-7:00/7:30." However the texts did not discuss wages or a schedule after the first week. The parties did not keep records, and they sharply differ as to the hours Ms. West worked each week and the amounts BCTA paid her.

Initially, Ms. West was BCTA's only employee. She testified that from January 9 until February 14, she made $100 to $140 per week depending on how many days she worked.[1] She stated that she and Ms. Lynch soon agreed that her duties required more hours than anticipated, and her wages raised to $500 per week beginning February 15.

Ms. West claimed that she received $500 until June 1 when her wages changed to $375 per week. The change to $375 is documented in another text exchange. On May 12, Ms. Lynch texted Ms. West: "Starting in June would $375.00 a week be good? It will be longer days. You won't constantly be working though. I really need somebody for mornings and evenings." Ms. West responded: "That would be great it would be perfect timing." Ms. Lynch then assured Ms. West that she would get at least two days per week off. Ms. West testified that she described the new situation as "great" and "perfect timing," even though her wages would be $125 less, because her dog would receive free training and she would have better hours.

Ms. West introduced photographs of calendar pages, which she stated reflected the hours she worked from May 19 until June 29.[2] She testified that she had no evidence of her hours before May 19 because she had written them in another calendar, which this calendar replaced. The pages showed that Ms. West worked approximately 39 hours per week during this period. Upon review, Ms. Lynch agreed that was substantially correct.

Ms. West testified that her wages changed again after Ms. Lynch "officially" hired her on June 26. She testified her hourly pay was $7.25 with a forty-hour workweek. She introduced a check stub for June 27 and 28 for seventeen hours at $7.25 per hour.

During her testimony, Ms. Lynch vigorously disputed Ms. West's account. She testified that she paid Ms. West $100 for about twenty hours of work each week until June 1. She stated she never paid her $500 per week because she could not afford it.

She said that she temporarily raised Ms. West's salary to $375 per week in June because of extra duties required for BCTA's move to a new location.[3] She agreed that when she "officially" hired Ms. West on June 26, she paid her $7.25 per hour.

---

[1] Ms. West admitted this is contrary to her affidavit, which stated she received $500 starting out.
[2] Ms. West did not bring the original calendar to the hearing.
[3] She admitted that, contrary to her affidavit, she paid Ms. West $375.00 for four weeks rather than two.

2

Regarding the injury, Ms. West testified that on the evening of June 29, she was pulling a dog house into a pen when two large dogs jumped on her, knocking her over the dog house.[4] She stated she called Ms. Lynch to let her know what happened. She also texted Ms. Lynch later that night to tell her she might want to check on the doghouse, but she did not mention an injury.

Ms. West attempted to work the next day, but she had to go home early due to low-back pain, which she testified she had never experienced before. Ms. Lynch said she did not know anything about an alleged accident until after Ms. West went to the emergency room on July 2. Nevertheless, records from several of Ms. West's providers were consistent with a history of dogs causing her to trip over a doghouse.

Ms. Lynch eventually filed a First Report of Injury, and Ms. West received authorized care from neurosurgeon Joseph Jestus. He diagnosed sciatica that was "more than 50% related to her workplace incident." Eventually, he performed a lumbar microdiscectomy, and then another surgery to remove a foreign object. On February 21, 2019, he noted she continued to complain of severe pain and numbness in her left low back radiating down her left leg. He found her to be at maximum medical improvement, placed her under sedentary work restrictions, and referred her to pain management. Dr. Jestus did not mention a psychological condition related to her injury or refer her for psychiatric care.

On July 23, 2019, Ms. West attended an evaluation with Dr. Vundyala Reddy of Pain Management Group. She told Dr. Reddy she thought about suicide, but she had not formed any plans. She also informed him that she was attempting to gain admission to a mental hospital. However, Dr. Reddy did not refer her for psychiatric treatment.

In September, Ms. West went to the emergency room for anxiety, depression, lack of sleep, and non-specific suicidal ideation. She began treatment at a mental-health center, where she received counseling and medication. She told the counselors that she had suffered from anxiety and depression since June 2017; however, the records do not mention her work accident or any trauma. She treated through November but stopped because she no longer qualified for free care.

Ms. West testified that she continues to suffer from anxiety and depression due to the accident and her resulting disability. She stated that she has an overwhelming feeling of worthlessness and is still very anxious around large dogs. She never received psychiatric treatment before her accident.

---

[4] The parties presented substantial evidence regarding the traumatic nature, or lack thereof, of the incident because of Ms. West's claim for psychiatric treatment. However, for reasons detailed below, the Court finds it unnecessary to go into those details at this time.

3

## Findings of Fact and Conclusions of Law

Ms. West must establish that she is likely to prove at trial that she is entitled to the requested benefits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019). The Court will first consider causation, then entitlement to psychiatric care, and conclude with Ms. West's average weekly wage and her request for additional temporary disability benefits.

To establish causation, Ms. West must show she is likely to prove that her low-back pain arose primarily out of and in the course and scope of her employment with BCTA. To do so, she must establish to a reasonable degree of medical certainty that her employment contributed more than fifty percent in causing her disability and the need for medical treatment, considering all causes. *See* Tenn. Code Ann. § 50-6-102(14).

Here, Ms. West testified that she never experienced low-back pain that radiated into her left leg until two dogs knocked her over a doghouse at work. She never strayed from this account when providing her history to numerous providers. BCTA did not offer any testimony contradicting Ms. West's account. Dr. Jestus, as authorized physician, gave his opinion that, given her history, her sciatica was more than fifty percent related to the work incident. BCTA offered no contrary medical evidence. Thus, the Court holds that Ms. West is likely to prove causation at trial.

As for psychiatric care, Tennessee Code Annotated section 50-6-204(h) states that psychological or psychiatric services shall be limited to those ordered by authorized physicians. Ms. West did not produce any evidence that an authorized physician ordered psychiatric care. Thus, her request is denied at this time.

The Court now turns to Ms. West's average weekly wage (AWW) and the alleged underpayment of temporary disability benefits. An employee's compensation rate at which she is paid disability benefits is two thirds of her AWW. Tenn. Code Ann. § 50-6-207. AWW is defined by Tennessee Code Annotated section 50-6-102(3)(A) as wages earned in the fifty-two weeks before the injury. The section also provides alternate methods for calculating AWW if employment was less than fifty-two weeks. Subsection (B) states that the parties may divide earnings by the actual number of weeks worked to arrive at AWW. If, due to shortness of employment, it is "impracticable" to use the actual weeks worked, the Court may calculate AWW through the wages of a similar employee under subsection (C).

In this case, the parties made what is normally a routine calculation very difficult. Their testimony as to wages is impossible to reconcile. The Court is skeptical of both accounts, given their admitted willingness to pay and receive wages "under the table." Further, no other witnesses and scant objective evidence corroborated either account. Nevertheless, the Court will attempt to construct an AWW given the evidence before it.

4

The Court first looks to the evidence the parties documented or substantially agreed upon: (1) Ms. Lynch initially paid Ms. West around $100 to $120 per week; (2) beginning June 1, Ms. West's wages became $375 per week; (3) Ms. West worked an average of thirty-nine hours per week from May 19 to the injury date; (4) once Ms. Lynch officially hired Ms. West, she paid her $7.25 an hour.

The biggest point of contention is whether Ms. Lynch paid Ms. West $500 from February 15 to June 1. Ms. West testified they renegotiated based on the hours she worked each week. Ms. Lynch categorically denied it, saying she could never have afforded it. As with each element of a claim, the burden of proof remains with the employee. The evidence does not make it likely that Ms. West will prevail on this issue.

The initial text exchange supports Ms. Lynch's testimony that Ms. West only worked part-time. She told Ms. West that there would not be many hours, and they set a schedule of around twenty hours for the first week. The Court doubts that Ms. Lynch would pay Ms. West $500 per week for part-time work as she began her new business.

Similarly, the Court finds it unlikely that Ms. West would describe a wage reduction from $500 to $375 as "great" or "perfect timing," and her stated reason for this statement is unconvincing. Further, while Ms. West worked an average of thirty-nine hours per week beginning May 19, Ms. Lynch explained this was a temporary increase in work duties as they moved locations, and it was this increase that justified $375.

In addition, when Ms. Lynch "officially" hired Ms. West, she listed her as a part-time employee making $7.25 per hour. Even at a forty-hour work-week, this only comes to $290 a week. The Court finds it difficult to believe that Ms. West would accept a forty-two percent wage decrease in two months without objection.

Finally, Ms. West did not provide any witnesses or documentary evidence that corroborated her account. Thus, the Court holds that Ms. West is not likely to prevail at trial regarding her claimed AWW.

Ms. West alternatively argued that, given the differences in the parties' testimony, the Court should base her AWW on the two documented days – June 27 and 28 – when her pay was $7.25 per hour for seventeen hours, and extrapolate those two days to a forty-hour work-week. The Court declines to do so. In this case, Ms. West received wages from January 9 until June 28, or approximately 24.5 weeks, which the Court finds to be ample time to calculate wages under Tennessee Code Annotated section 50-6-102(B).

Since the Court finds Ms. Lynch's account of Ms. Welch's wage history corroborated by documentation and justified by logic, the Court will use it to calculate AWW. The Court finds that Ms. West's wages from January 9 until June 1, a period of

twenty weeks and three days, was $100 per week. She then received $375 per week for four weeks, and then $123.25 for the two days before her injury. This totals $3,673.25, which divided by 24.5 weeks, comes to $149.93 per week. This is less than the applicable minimum compensation rate of $133.40 per week, which is what Ms. West received in temporary disability benefits until she reached maximum medical improvement. Thus, the Court holds she is not entitled to additional benefits at this time.

IT IS, THEREFORE, ORDERED that:

1. BCTA shall continue to pay for treatment by authorized physicians causally related to her work injury of June 28, 2017. Ms. West's requests for additional temporary disability benefits and a panel of psychiatrists are denied at this time.

2. This case is set for a Scheduling Hearing on **April 7, 2020**, at **9:00 a.m. Central Time**. The parties must call 615-253-0010 or toll-free at 855-689-9049 to participate. Failure to call might result in a determination of the issues without your participation.

3. Unless an appeal is filed, compliance must occur no later than seven business days from entry of this Order, pursuant to Tennessee Code Annotated section 50-6-239(d)(3). BCTA must submit confirmation of compliance by email to WCCompliance.Program@tn.gov no later than the seventh business day from entry. Failure to submit confirmation may result in a penalty assessment. For questions, please contact the Compliance Unit at WCCompliance.Program@tn.gov.

**ENTERED February 10, 2020.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. Ms. West's Responses to Interrogatories
2. Ms. West's Supplemental Responses
3. Records from Plateau Mental Health Center
4. Ms. Lynch's Responses to Interrogatories
5. Physical Therapy Records

6

6. Records from Crawford Chiropractic
7. Records from Cumberland Medical Center
8. Records from Dr. Jestus
9. Records from Pain Management Group
10. Records from Cookeville Regional Medical Center
11. Form W-4 and Check Stub
12. Typed First Report of Injury
13. Ms. West's affidavit
14. Ms. Lynch's affidavit
15. Texts between Ms. West and Ms. Lynch
16. Photographs of Ms. West's Calendar
17. Handwritten First Report of Injury
18. Schedule of temporary disability benefits payments
19 Wage Statement

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Order Compelling Discovery
5. Response Opposing Request for Expedited Hearing
6. BCTA's Pre-Hearing Brief
7. Ms. West's Pre-Hearing Brief
8. Case Law Submitted by the Parties

## CERTIFICATE OF SERVICE

A copy of this Order was sent as indicated on February 10, 2020.

| Name | Certified Mail | Via Email | Email Address |
|------|---------------|-----------|---------------|
| James Higgins | | X | jsh@higginsfirm.com |
| Steve Erdely, IV | | X | serdely@dmrpclaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

7



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s) (Requesting Party):**_____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*